WELCH & GRIFFIN, Appellee, v. B. F. COLLENBAUGH, Appellant.

**Brokers:** COMMISSIONS. A real estate broker can not recover commissions on a *quantum meruit* or otherwise without establishing an employment by defendant.

**Same:** CONTRACT OF EMPLOYMENT: EVIDENCE. Where the owner of property asked no assistance of an agent in the sale thereof and refused his request to list the land, a contract of employment will not be inferred from the fact that the owner knew the agent was about to show the property to a prospective purchaser.

*Appeal from Sac District Court.*—HON. F. M. POWERS, Judge.

WEDNESDAY, APRIL 5, 1911.

THIS is a suit for commission for the sale of real estate. At the close of the evidence the trial court directed a verdict for the plaintiff. The defendant has appealed. —*Reversed.*

*S. M. Elwood* and *S. E. Stanfield,* for appellant.

*R. L. McCord,* for appellee.

EVANS, J.—The plaintiff is a partnership consisting of more than one member; but the transaction out of which alleged liability arose was had solely with the partner Welch, and we shall refer to him as if he were sole plaintiff. The petition averred "that the defendant *employed* the plaintiff to find a purchaser" for his farm consisting of one hundred and fourteen acres at a price of $125 per acre. It averred also that the plaintiff found such a purchaser who was ready, able, and willing to pay, and that his services therefor were reasonably worth the sum of $114, for which he asked judgment. The answer was in effect a general denial. The facts in the case are not greatly in dispute. The plaintiff was a real estate agent and solicited the defendant to list his farm with him for sale. This the defendant refused to do, but expressed his willingness to consider an offer of $125 an acre if one were made. There were two or three conversations between the parties of substantially the same import, and it is undisputed that the defendant always refused to offer or list his land for sale, but also expressed a willingness to consider an offer as before stated. Some time later, the plaintiff called the defendant over the telephone and asked him to take $120, and also asked him to take something less than $125 per acre, to all of which the defendant refused to accede. He also told defendant that he had a

customer to whom he was going to show the land the following day. To this suggestion the defendant replied, "Very well." We take the following excerpts from the testimony of the defendant:

He met me on the street here a great many times after I bought that place and wanted I should price it and list it with him for sale, which I refused to do. . . . About October 1st he stopped me on the street and wanted to know if I was ready to list it or price it. I told him no, but that, if he came across a man who wanted to pay $125 an acre for it, and if he would report it to me, I would consider the matter, and, if I could buy a farm that suited me located closer to home, I might sell it. We might be able to make a deal in that way. . . . I had heard the Wickersham place was for sale, and I had heard it was not; but I did not care to go into any details until I found whether there was a man ready to buy the place I had over there. . . . Welch said he did not care to list land that way, . . . or rather than he did not like to show land that way . . . because he might find a buyer and not be able to deliver the goods, and I told him that he could work on it under these conditions or not as he chose. . . ."

The telephone conversation is given by defendant as follows:

Welch asked me if I had concluded to sell my place. I told him I had not changed my mind since our previous conversation. He asked me if I would take $120 an acre, and I said no. Then he asked me if I would take less than $125, and I said no and referred him to our conversation on the street. He asked me about terms in case of a deal, and I told him we could arrange terms all satisfactory, and that $500 to $1,000 down and the balance March 1, 1910, would be satisfactory, and in case we made a deal. . . . He told me he had a man here and would take him over and show him the farm the next day, and I said, 'Very well.'

The plaintiff took his customer to the farm on the

following day. At that time they again offered the defendant $120 an acre, which he refused to consider. They finally offered him $125 per acre, whereupon the defendant stated that he would accept or reject the offer during the day. He immediately proceeded to ascertain whether he "could buy the Wickersham place," and found that he could not do so. He thereupon declined the offer. The defendant conceded upon the trial that $1 per acre was the usual commission for finding purchasers for lands. Thereupon the trial court directed the verdict as already stated.

The theory of plaintiff is that he is not suing on a contract, but on a *quantum meruit*. His contention is that he found a purchaser for the defendant who was ready, able, and willing to buy, and that he did so with the knowledge and acquiescence of the defendant, and that he is therefore entitled to his commission regardless of whether the price offered was accepted by the defendant or not. This view is not tenable. The action of plaintiff is necessarily based upon the alleged contract of employment. His petition alleged such employment. The defendant's answer denied it, and his testimony clearly negatived it. There could be an employment without any express agreement as to the rate of compensation. The contract of employment being proved, the rate of compensation could be determined on *quantum meruit*. But the right of compensation at all was dependent upon the question whether there was any employment of the plaintiff by the defendant to procure a purchaser for him.

The defendant asked no aid of the plaintiff and refused all his solicitations for employment. Upon such a state of facts, employment can not be implied from the mere fact that defendant knew that the plaintiff was about to take a customer to see the farm with a view of making an offer for it. A property owner is not precluded from engaging in conversation with an agent who

solicits an agency from him, nor is he bound to forbid an agent to look at his property or to show it to a customer, in order to protect himself against liability.

Upon this record it is very clear to us that the trial court erred in directing the verdict, and its judgment must therefore be *reversed.*